District Court, S. D. New York.

Nov. 16, 1938.

## EQUITABLE PAPER BAG CO., Inc., v. JOHN WALDRON CORPORATION.

District Court, D. New Jersey.

Dec. 29, 1938.

Oscar W. Jeffery and George M. Dowe, both of New York City, for plaintiff.

Theodore S. Kenyon and Lewis O. Hutchinson, both of New York City, for defendant.

CLARK, District Judge.

The Court and the defendant have a different conception of the improvement

here in litigation. We see it as the establishment of a definite *angle* of incidence for the flap forming lines of severance in a phase of the paper bag making art. He seems to find it in the particular *method* of severance. Defendant concedes and in fact boasts that his flap forming lines have the same longitudinal components (God save the mark and the patent solicitor) as those of the plaintiff. On the other hand, he severs by means of perforating and tearing rather than slitting and cutting, using feeding and clamping rollers with different speeds (Hollweg machine) instead of slack producing pinch bars, strikers and knives.

If we agreed with his emphasis we should agree with his conclusion. Perforating and tearing are not exactly the same as slitting and cutting. If the inventive significance lies in the particular type of flap forming lines, the particular method for the separation of the paper along those lines is unimportant. Being unimportant, the slight change in the case at bar does not avoid infringement.

Defendant's counsel conceded the patentable character of the plaintiff's improvement. He stressed rather, as is apparent from what we have just written, its narrow scope. That posture of the case *might* raise a question that has always interested us. It is whether parties through their counsel can establish the validity of a patent either by complete concession in a consent decree or as here by insistence on non-infringement. The answer would seem to lie in a consideration of the fundamental theory of the patent system. In other words, is the patent office or are the courts the guardians of the public's undoubted interest in the limited monopoly and its purpose? Our choice of the word might indicates our view that we need not answer that question in this opinion. This because it is our judgment that the improvement does reveal the departure "from the common ruck of men who are content to follow beaten paths and unable to find others." B. G. Corporation v. Walter Kidde & Co., 2 Cir., 79 F.2d 20, 22. We say that as a judicial officer not notably biased in favor of validity.

The problem for solution was the addition to well-known paper bag machinery of a mechanical device or attachment for the production of the flaps old in the envelope machinery art. The machines there employed were adapted for die cutting with the consequent increase in expense due to greater labor costs, greater waste and less speed. The die cutting produced the long flaps now held desirable for the cheaper grocery or notion bags. As those bags by definition, so to speak, must be kept cheap, some substitute for the expensive die cutting of the envelope machine had to be found. Poppe's, the inventor here, touch of genius lay, we think, in his realization of the essential defect in the prior art. We set forth below what we deem to be the significant lines in both the prior art and Poppe's patents. In doing so, we give them the benefit of specifications as well as claims.

Goodale, reissue No. 8,568, February 4, 1879 "side cutters are *curved* * * * the form of said cuts being such as to provide one of the plies of the tube with a projecting lap * * *" Lines 46, 47, 3–5, patent, first page, columns 1, 2.

Wells, reissue No. 8,580, February 11, 1879 "a severing-knife, 2, having a serrated edge * * * and extends *obliquely* across said middle the required distance * * *" Lines 40, 41, 45, 46, patent, first page, column 2.

Nixon, No. 189,056, April 3, 1877 "a revolving perforating-blade, having an edge describing an *obtuse* angle crosswise of the paper * * *". Lines 15–17, patent, first page, column 1.

Stilwell, No. 410,125, August 27, 1889 "a cutting device * * * where a lip is desired on the blank *curved,* as shown." Lines 40, 43, 44, patent.

Stilwell, No. 410,126, August 27, 1889 "the knife being given the *curved* form shown * * *". Lines 86, 87, patent, first page.

Graham, No. 1,032,366, July 9, 1912 "by lines of perforations extending in *different* transverse planes * * * uniform bottom fold or turn up * * *". Lines 22–24, 31, patent, first page.

Poppe, reissue, No. 19,921, April 7, 1936 "While in the present illustration of the invention, the slits or cuts formed in the web are positioned at an angle of approximately 20° to the longitudinal axis of the web, this angle may be increased or decreased as desired and in some instances the slits may be formed parallel to the longitudinal axis of the web". Lines 35–41, patent, first page.

Even cursory comparison indicates the difference. The prior art patents do indicate diagonal lines or slits. They show no

realization, however, of the fact that a successful flap depends upon the angle of incidence we spoke of earlier. Because of that failure, the flaps resulting were the small hand-holes of the old art. Because of Poppe's greater perception, his flaps are those found useful by the trade.

An injunction will issue.